Robert L. Lewis and F.R. Jones, for more than 20 years, have owned in indivision 100 acres of land located in Claiborne Parish, Louisiana, the tract being bisected by a creek running approximately east and west through its center. The two parts are sometimes hereinafter referred to as the north half and south half.
During the greater portion of such period the co-owners farmed the property under an agreement or arrangement whereby each would use one-half of the cultivatable land over the entire 100 acres. Neither was restricted to either of the described parts.
About the year 1934 the agricultural conservation program of the United States Government became effective in Claiborne Parish, and the named persons then and thereafter sought to participate therein and to avail themselves of the benefits which it afforded.
For the year 1940, one Ester Richard, the plaintiff herein, rented for farming purposes from Robert L. Lewis the latter's undivided one-half interest in the 100 acre tract, agreeing to pay therefor 650 pounds of seed cotton. No negotiations were had by him with F.R. Jones. Acting under the rental agreement, the tenant planted and cultivated approximately five acres of cotton on the property's north half.
On or about September 12, 1940, Jones caused to be plowed up and destroyed the entire five acres of cotton planted by Richard, most of which was then open and ready for picking.
This suit was brought by Richard against Lewis and Jones, he praying that the defendants be condemned in solido to pay him the sum of $200 in compensation for the destruction of his cotton.
The liability of Lewis is asserted on the theory that his warranty as lessor of plaintiff's peaceful possession of the land has been breached.
An unlawful or tortious act is charged on the part of Jones; and, respecting that defendant, plaintiff avers:
"That the said F.R. Jones knew that your petitioner had rented a portion of the land for the year 1940 from the said Robert L. Lewis, and also knew for what purpose your petitioner had rented said land, but the said F.R. Jones did not forbid nor even tell your petitioner that he could not plant cotton, corn or anything else on said land for the year 1940, and the said F.R. Jones is now estopped from denying your petitioner's contract and rental agreement with Robert L. Lewis.
"That the above stated five acres of cotton planted by your petitioner was the sole and only cotton planted on the above described 100 acres of land, and said cotton *Page 377 
was planted by your petitioner with the express consent of the said Robert L. Lewis, and the tacit consent of the said F.R. Jones."
After the filing of exceptions of misjoinder and of no cause and no right of action by each defendant, a voluntary nonsuit was entered by plaintiff's counsel as to defendant Lewis.
Later the exceptions of no cause and no right of action tendered by defendant Jones were overruled.
Jones then answered averring that following the effective date of the government's cotton program he and Lewis went before the cotton administrator of Claiborne Parish, Louisiana, and tacitly divided the property for the purpose of cultivation of cotton; and in accordance with said agreement, the north half was allocated to Jones and the south half to Lewis.
Jones further avers, as stated in the brief of his counsel, that "the plaintiff was cultivating the north half of the 100 acres, which was the property allocated to F.R. Jones in the cotton contract, and that in September of that year the said Jones was notified that his cotton acreage was over and that he would be required to plow up certain acreage in order to comply with his cotton conservation program and that his failure to do so would nullify his contract with the Government which gave him benefits amounting to several thousand dollars. There being no cotton allocated to the north half of the hundred acres, the defendant was forced to plow up the crop that had been illegally planted thereon by the plaintiff, and this was done in September as alleged by the plaintiff."
The trial of the case resulted in a judgment against Jones for $50 and he appealed. Plaintiff is not asking an increase of the award.
The evidence shows that prior to 1936 there existed some confusion respecting the designating of acreage under the cotton control program of Claiborne Parish, particularly with reference to lands owned in indivision. In the spring of that year an aerial survey of the parish was made which aided materially in eliminating much of the confusion. By using the picture the acreage permitted to be planted in cotton could be easily located and designated.
In 1937 it was agreed between Lewis and Jones that during and after such year Lewis would cultivate the south half of their jointly owned 100 acre tract while Jones would have charge of the north half; and a notation of their understanding was entered on the records of the administrator's office. But the agreement was not observed; instead those persons continued to operate under the theretofore existing arrangement which was that each could cultivate any part of the entire tract that he desired.
For instance one Lonnie Wafer, a tenant of Lewis', planted cotton in both halves during the years 1937 and 1938. Will Harris, who rented from Jones, raised cotton in the south half or the part set aside for Lewis, during the years 1937, 1938 and 1939. Plaintiff, who was Lewis' tenant, had his cotton crop in the south half in 1939 and in the north half in 1940.
None of those tenants, it appears, had any knowledge of the above-mentioned division agreement of 1937; neither was any one of them notified by the program's administrator as to the particular plot he should plant.
Jones owned land in Claiborne Parish in addition to that under consideration; and with respect to all of his property, his allotment for the planting of cotton in 1940 was 209 acres. But he over-planted his allowable acreage for that year, and to prevent his losing certain parity and conservation payments and his being subjected additionally to a penalty it became necessary for him to plow up some cotton.
In effecting the required reduction Jones chose to and did destroy plaintiff's crop of five acres standing on the north half of the 100 acre tract, the part, according to the records of the administrator's office, that was assigned to him. Had he so desired, however, the destruction could have been accomplished elsewhere on lands that he had planted.
If Jones and Lewis had abided by their division agreement of 1937, the former's act would have been justified. But this they did not do. It was abrogated, and they continued to farm the 100 acres under the previously existing and above-described arrangement. In view of this it must be held that plaintiff's planting of the north half was done with the assent and authorization of both co-owners. From this it follows that Jones is now without right to invoke the 1937 allocation; that his destructive act was improper and illegal; and that he must repair the damage occasioned plaintiff. *Page 378 
The exceptions of no cause and no right of action filed by Jones, which are again being urged, were correctly overruled. Contained in the petition are allegations revealing the material facts above discussed and found, including those showing plaintiff's planting of the cotton with the "tacit consent of the said F.R. Jones."
The award of $50 is amply supported by the evidence.
The judgment is affirmed.
DREW, J., recused.